Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiff

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TERA D., individually and on behalf of J.D. a minor, <br><br> Plaintiff, <br><br> vs. <br><br> HEALTH CARE SERVICE CORPORATION, d/b/a BLUECROSS BLUESHIELD of TEXAS, <br><br> Defendant. | COMPLAINT |

Plaintiff Tera D. ("Tera"), individually and on behalf of J.D. a minor, through her undersigned counsel, complains and alleges against Defendant Health Care Service Corporation, d/b/a BlueCross BlueShield of Texas ("BCBSTX") as follows:

## PARTIES, JURISDICTION AND VENUE

1. Tera and J.D. are natural persons residing in Collin County, Texas. Tera is J.D.'s mother.

2. BCBSTX is a d/b/a of Health Care Service Corporation and is headquartered in Chicago, Illinois.

1

3. BCBSTX is an independent licensee of the nationwide BlueCross and BlueShield network of providers and was the insurer and claims administrator, as well as the fiduciary under ERISA for the insurance plan providing coverage for the Plaintiff ("the Plan") during the treatment at issue in this case.

4. The Plan is a fully-insured employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Tera was a participant in the Plan and J.D. was a beneficiary of the Plan at all relevant times.

5. J.D. received medical care and treatment at Vista Sage ("Vista") from November 5, 2020, to June 21, 2021. During the timeframe at issue in this case, Vista was a licensed treatment facility located in Salt Lake County, Utah, which provided sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

6. BCBSTX denied or refused to properly process claims for J.D.'s medical expenses in connection with his treatment at Vista.

7. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

8. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because BCBSTX does business in Utah through its network of affiliates, and the treatment at issue took place in Utah.

9. In addition, the Plaintiff has been informed and reasonably believes that litigating the case outside of Utah will likely lead to substantially increased litigation costs she will be responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, given the sensitive nature of the medical treatment at issue, it is the Plaintiff's

desire that the case be resolved in the State of Utah where it is more likely both her and J.D.'s privacy will be preserved.

10. The remedies the Plaintiff seeks under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendant's violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### Vista

11. J.D. was admitted to Vista on November 5, 2020, due to issues which included anxiety, gender identity problems, depression, ADHD, and low self-worth.

12. Vista contacted BCBSTX to request approval for J.D.'s treatment and was told verbally that treatment would be denied due to a lack of 24-hour nursing presence. Vista requested that a denial letter be issued, but BCBSTX refused to provide one.

13. In a letter dated January 7, 2022, Tera submitted an appeal of the denial of payment for J.D.'s treatment at Vista. She wrote that in addition to the verbal notice given to Vista of the denial of payment she received explanation of benefits statements denying payment under the justifications that:

> Coverage for this service has been denied because the provider was not eligible to bill this type of service according to the provider's credentials, or the service was not within the scope of the provider's practice under the provider's license or applicable medical standards or guidelines.

and

> We have asked your health care provider for more information. We will complete your claim when this information is received. No payment for this service can be made at this time.

3

14. Tera stated that she had verified that a complete copy of J.D.'s medical records had been sent to BCBSTX and that this should be sufficient information for BCBSTX to process the claims.

15. She argued that BCBSTX's other denial was not sufficiently specific as to why the treatment was denied, and she could only presume that the denial was due to a lack of 24-hour nursing coverage as BCBSTX had verbally informed Vista, even though no such justification had ever been communicated to her.

16. She contended that she was entitled to certain protections under ERISA during the review process, including a full, fair, and thorough review conducted by appropriately qualified reviewers which took into account all of the information she provided, gave her the specific reasons for the adverse determination, referenced the specific plan provisions on which the denial was based, and gave her the information necessary to perfect the claim.

17. She asked that the reviewer be knowledgeable about generally accepted standards and clinical best practices for residential programs in the State of Utah, and that they be trained in the details of MHPAEA to meaningfully respond to the arguments she raised. She also asked for any documentation related to the denials, including any case notes or reports.

18. Tera wrote that BCBSTX had an obligation to act in her best interest and expressed her concern that BCBSTX had failed to act in her best interest or according to BCBSTX's obligations under ERISA and the Plan by refusing to issue a written denial which clearly identified BCBSTX's justification for denying payment.

19. Tera stated that after she was informed that BCBSTX had verbally denied the claim based on the 24-hour nursing requirement, she reviewed her governing plan document in its entirety but language requiring 24/7 onsite nursing was not in the document.

20. She wrote that she was frustrated at BCBSTX's refusal to cite to any particular plan provision to justify its decision and stated that because BCBSTX voided the claims instead of simply denying them, she was forced to submit claims to BCBSTX knowing that they would likely be denied, simply so that she could have a written denial to appeal.

21. She alleged that BCBSTX failed to follow the appeals procedures process as set forth in the terms of the Plan and when asked to support its decision in writing had, "flatly refused to provide it with no reasonable explanation."

22. She contended that treatment at Vista was a covered benefit under the Plan. She wrote that Vista was a licensed residential treatment facility and compliant with governing state regulations. She reiterated that she was not able to find any requirement in her governing plan document which stated that 24-hour nursing care was a prerequisite for coverage of residential treatment facilities.

23. She argued that BCBSTX's denial was a violation of MHPAEA. She stated that MHPAEA compelled insurers to ensure that benefits for behavioral health services were offered at parity with medical or surgical benefits in the same classification.

24. She identified skilled nursing, subacute rehabilitation, and inpatient hospice as some of the medical or surgical analogues to the treatment J.D. received.

25. She included a table showing a disparity in licensing and which showed that, at least on paper, BCBSTX did not impose a 24-hour nursing requirement on any of the intermediate level services listed as covered services under the Plan.

26. In practice however, BCBSTX's verbal justification for denying payment at Vista revealed it imposed additional requirements on residential treatment care which were not communicated in the Plan's written materials or governing documents.

27. She asked BCBSTX to perform a MHPAEA compliance analysis on the Plan to ensure that the Plan was being operated in accordance with the statute and also asked to be provided with physical copies of the results of this analysis.

28. In addition, Tera asked to be provided with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits she was seeking, any administrative service agreements that existed, any clinical guidelines or medical necessity criteria utilized in the determination (along with their medical or surgical equivalents, whether or not these were used), together with any reports or opinions regarding the claim from any physician or other professional, along with their names, qualifications, and denial rates (collectively the "Plan Documents").

29. BCBSTX did not respond to Tera's appeal.

30. The Plaintiff exhausted her pre-litigation appeal obligations under the terms of the Plan and ERISA to the degree possible given BCBSTX's failure to abide by the terms of the appeal process.

31. The denial of benefits for J.D.'s treatment was a breach of contract and caused Tera to incur medical expenses that should have been paid by the Plan in an amount totaling over $160,000.

//

//

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

32. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as

BCBSTX, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

33. BCBSTX and the Plan failed to provide coverage for J.D.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

34. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

35. BCBSTX failed to abide by its obligations under both ERISA and the terms of the Plan to properly process the claims and appeals it received.

36. Neither ERISA nor the language of the governing plan documents allow BCBSTX to deny payment based on factors not listed in the insurance contract.

37. Nor do they allow BCBSTX to refuse to engage with plan participants in the appeal process by voiding claims or otherwise circumventing the procedures outlined in the governing plan documents.

38. In this case, BCBSTX declined to pay for treatment, refused to participate in the appeals process, withheld requested documentation, and provided Tera with essentially no justification as to why it had done so. BCBSTX did this despite its statutory and fiduciary obligations, as well as the terms of the insurance contract BCBSTX itself drafted.

39. BCBSTX and the agents of the Plan breached their fiduciary duties to J.D. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in J.D.'s interest and for the exclusive purpose of providing benefits to ERISA

participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of J.D.'s claims.

40. The actions of BCBSTX and the Plan in failing to provide coverage for J.D.'s medically necessary treatment are violations of the terms of the Plan and its claims and appeals procedures.

41. While the presentation of alternative or potentially inconsistent claims in the manner that Plaintiffs state in their first and second causes of action is specifically anticipated and allowed under F.R.Civ.P. 8, Plaintiffs contend they are entitled to relief and appropriate remedies under each cause of action.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

42. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of BCBSTX's fiduciary duties.

43. MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

44. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

45. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on

medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

46. While the criteria used by BCBSTX for the intermediate level mental health treatment benefits at issue in this case appear to be neutral on their face, in application, BCBSTX utilized factors and strategies which were more stringent or restrictive than the application of the criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

47. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for J.D.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

48. When BCBSTX and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice.

49. The Plan purports to rely on generally accepted standards of medical practice when it evaluates the medical necessity of covered benefits. Generally accepted standards of medical practice for residential treatment centers include policies such as regular meetings with a mental health professional and evidence-based treatment interventions.

50. Generally accepted standards of medical practice are largely codified and enforced by the appropriate licensing, regulatory, and accreditation entities. In the case of residential treatment for mental health and substance use disorders, no licensing, regulatory, or

accreditation entities require 24-hour onsite nursing services as part of generally accepted standards of care.

51. In spite of this, and despite the fact that no such written requirement is present in the terms of the Plan, BCBSTX denied payment for treatment at Vista based on factors such as 24-hour nursing presence, disparities in licensure requirements, and perhaps other factors as well which cannot be articulated at this point due to BCBSTX's refusal to communicate its reasoning in written correspondence.

52. The violations of MHPAEA by BCBSTX and the Plan are breaches of fiduciary duty and give the Plaintiff the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of the Defendant violate MHPAEA;

    (b) An injunction ordering the Defendant to cease violating MHPAEA and requiring compliance with the statute;

    (c) An order requiring the reformation of the terms of the Plan and the criteria utilized by the Defendant to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

    (d) An order requiring disgorgement of funds obtained by or retained by the Defendant as a result of their violations of MHPAEA;

    (e) An order requiring an accounting by the Defendant of the funds wrongly withheld from participants and beneficiaries of the Plan as a result of the Defendant's violations of MHPAEA;

    (f) An order based on the equitable remedy of surcharge requiring the Defendant to provide payment to the Plaintiff as make-whole relief for her loss;

 (g) An order equitably estopping the Defendant from denying the Plaintiff's claims in violation of MHPAEA; and

 (h) An order providing restitution from the Defendant to the Plaintiff for her loss arising out of the Defendant's violation of MHPAEA.

53. In addition, Plaintiff is entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiff seeks relief as follows:

1. Judgment in the total amount that is owed for J.D.'s medically necessary treatment at Vista under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiff's Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 2nd day of November, 2023.

            By   s/ Brian S. King
                Brian S. King
                Attorney for Plaintiff


County of Plaintiff's Residence:
Collin County, Texas